Case number 22-1220, Federal Education Association Stateside Region Petitioner v. Federal Labor Relations Authority. Mr. Hearn for the petitioner, Mr. Tso for the respondent. Go ahead whenever you're ready. May it please the court, I'm Richard Hearn for the Federal Education Association. We offer three separate arguments, each of which provide an independent basis for setting aside the authority's decisions in this case in reinstating arbitrator organs of war. First, the courts and the FLRA have consistently held that the determination of whether parties have entered into a collective bargaining agreement. Before we get to the merits, can we talk about jurisdiction here first? So it's mentioned only very briefly in your opening brief and not much more detail in the reply brief, but we can only review an order of the FLRA from an arbitration award if it involves an unfair labor practice. So how does the FLRA's order here involve an unfair labor practice? Well, in the National Weather Service Employees Organization case, this court said that a decision in an arbitration case from the authority is reviewable if it disposes of a party's unfair labor practice claim. The case before the arbitrator was clearly a case about an unfair practice. Unfair labor practices were specifically alleged in both grievances. They were specifically agreed to by both parties as the issues to be resolved by the arbitrator, and the arbitrator spent four pages of his decision finding... So, but our case law is very clear that it doesn't matter whether the arbitrator's award involves an unfair labor practice. The question is whether the FLRA's order involves an unfair labor practice. It disposed of the unfair labor practice, which is the test under the National Weather Service. How does it dispose of an unfair labor practice? It overturned the arbitrator's finding that there was an unfair labor practice and the relief he ordered pursuant to it. The authority's decision did not address or discuss at all any contractual claim. In fact, that's one of the reasons why we find fault with it. It acknowledged that the arbitrator had found that the... In its decision, it acknowledged, quote, the arbitrator found that the agency committed unfair labor practices by refusing to continue negotiations, submitting an unexecuted agreement for agency head review and repudiating the party's 2005 master agreement, and then it went ahead to specifically, quote, set aside the arbitrator's finding that the statute didn't violate it. That was all that we see that the FLRA's decision was about, setting aside the arbitrator's finding that there was an unfair labor practice. But part of the reason it sets it aside is the jurisdictional issue of the arbitrator's mandate or scope of review. Yes, and as this court made clear in National Weather Service Employees Organization, once you meet the threshold of involving an unfair labor practice, then the entire authority's order and all of its reasoning becomes open for review. I think that, I mean, that is not perhaps the best reading of that case, NWSEO. I mean, disposes of in that context. I mean, if we were to consider an FLRA order to dispose of a ULP in such a broad way, I mean, wouldn't the exception swallow the rule? No, because this court has found many times that there have been appeals brought to this court many times by union, by unions, where there was not a finding of an unfair labor practice in the underlying arbitration award that the FLRA set aside and later tried to, the union tried to recharacterize the case as an unfair labor practice case. And the court, this court, in numerous opinions, looked to whether there was an unfair labor practice claim alleged in the grievance, looked at the issues decided by the arbitrator, and then looked to see whether the authority's decision disposed of any unfair labor practice claim finding, whether it was one way or another. I think of the very first case, Overseas Education Association, which in fact is a predecessor of this union. There was, in the FLRA's decision in that case, there was actually no discussion of whether an unfair labor practice had been committed or not. The question was solely whether what had been alleged in the grievance was the same subject matter as was the subject of an earlier unfair labor practice charge that was filed but never adjudicated. The authority never got into, in the Overseas Education Association case, the question of whether an unfair labor practice had been committed or not. In fact, the arbitrator in that case did not even find an unfair labor practice because it was ultimately determined by this court that the arbitration case wasn't about the that that mere, the mere, any involvement of an unfair labor practice creates a threshold, passes the threshold for judicial review in this case, in a case. In this case, the predominant claim, predominant claim in arbitration, the issues that were submitted by the parties to the arbitrator and a substantial portion of his award was a finding of an unfair labor practice, the breach of the duty to bargain in good faith. And the authority specifically acknowledged in both its original decision and its reconsideration decision that that was the basis of the arbitrator's decision. And in its conclusion in the first case, it set aside the arbitrator's finding that the statute had been violated. It wasn't finding that the statute, that the contract had been violated. The arbitrator, the authority's decision was solely based on his finding that the an unfair labor practice had not been committed. Um, the original, the first argument we were making on the merits, Judge Rao, is that the courts have, the courts and the authority have consistently held that this, that the arbitrator's finding that the parties did not re-enter into a new, new collective bargaining agreement was a factual finding. And the, and that should have, that factual finding by the arbitrator should have been the end of the matter. Because, um, the Supreme Court has held in major league baseball players versus Garvey, paper workers versus Misto, that an arbitrator's factual findings are simply not subject to review. And as this court made clear not long ago in the National Weather Service Employees Organization case, the, um, the FLRA is supposed to apply the same standards to review of arbitration awards in federal sector as is applied in the private sector. Our second argument is that the FEA and DOD took great pains to avoid any dispute over whether they had entered into a collective bargaining agreement. They agreed in both the ground rules and in the tentatively agreed to provision of the new contract that the old agency had reviewed or implemented until the parties actually physically signed the new contract, acknowledging that they had a meeting of the minds. The, the FLRA in the case of the Association of Civilian Technicians, Kentucky Long Rifle Chapter, um, wrote that, quote, the parties may adopt ground rules that specify the conditions in which they will recognize an review. And just last year, this court in the National Treasury Employees Union case, um, noted that the FLRA's decision in the civilian technicians case stood for the very, um, simple proposition that the parties may define for themselves when they consider a contract to be executed. That case law was totally ignored in the authority's decision in this, in this case. Furthermore, the authority's case law that holds that an arbitrary, that a contract is automatically executed upon the issuance of an FSIP decision says only if no further action is necessary to finalize a complete agreement. That is an important qualifier that the FLRA ignored in this case. Um, let me see if my colleagues have any questions. No. Um, Judge Henderson? No, thank you. Thank you. We'll give you a few minutes on rebuttal. May I please the court? Uh, Thomas So for the FLRA. Uh, in response to Judge Rao's question, there is no jurisdiction here. The authority's decision order did not involve the ULP. And contrary to what, um, the petitioners argue at the core of this case is a very straightforward case about the panel resolving a contractual impasse, making a contractual decision. Then they went to an arbitrator to try to overturn that contractual resolution. If you look at the arbitrator's decision in, um, JA-19, they went through the same analysis of, of the panel's just to disagree with the panel. But that's contrary to what the statute intended. The statute intended the panel to have the final authority to decide all these contractual questions and resolve these contractual issues. And they deprived the authority of neither the authority nor the court to review the finality of that decision. And that's clear from the Brewer decision here in the DC circuit. Now, all this case, all this, all of the discussion of unfair labor practices really turns on that contractual issue at the core of this case. And what they want the court to do is basically overturn the panel's decision, uh, that resolves a contractual dispute to different proposals. The panel decided those proposals. So is it your view that the, that the authority's order doesn't involve a ULP? Yes, that is the position. And what about the fact that the, that the arbitrator's decision does extensively talk about ULP? Well, so the arbitrary decision, if you read the arbitrator's decision, it's, it's a very sequential decision at the core of the decision foundation decision is an argument about what the contract means and what the, what the two proposals, what, which proposal is more favorable than the other. That's what the panel is built for. That's what the panel's authorized. You say so Congress authorizes them to resolve these contractual matters. This is why the arbitrator exceeded its jurisdiction, went out of its way to then overturn a fiscal decision, a panel decision, and then built upon that, make some, uh, straight, you know, um, additional extraneous sort of conclusion about what a ULP may exist. If the panel had sided with the, with the union, but the panel did not side with the union, the panel sided with the agency. And from, from the outset, the union had tried to, um, overturn that decision, but the Congress did not allow any judicial review. So with, so in the authority's opinion, why does the authority's, uh, decision here or order here not necessarily implicate a ULP, which is one of the standards in our case law for jurisdiction? And before you answer that, um, address specifically in the second paragraph of the order, the language sentence, consequently, the arbitrator found that the agency committed unfair labor practices, ULPs, and then listed three that were committed. Yeah, so if you, if you look at the, uh, arbitrator's decision, all of those ULPs are founded upon the fact that they had to resolve the contractual dispute that the panel already resolved. So it's built upon the fact that the arbitrator said there was conflict between these two provisions. Well, where does the authority then say, even though we consider them to be ULPs, they really aren't that, is that your argument? Well, there, so there are a couple of points here. One is that it is a direct review. So, so what we said, what the authority said is that this is a form of a direct review, not a form of a collateral attack. And the reason why it's a direct review is because the allegations of the ULP are founded on overturning the panel's resolution of this contractual issue. And a true ULP, as the authority points out, has to be a collateral attack. And what Brewer has said all the way from D.C. Circuit early on, a collateral attack using a ULP has to be against the validity of the decision, not the merits of the decision. So it can't be, you can't be challenging sort of what the panel says is the better contractual proposal. What you can do is challenge the validity of the decision. For example, if there's a constitutional infirmity, if there's some statutory violation. But at the court here, if you look at JA-19, the arbitrator started off purely trying to resolve the contractual issue that this have already resolved and the panel already resolved. So, yeah, but the question is whether or not a ULP is implicated, the jurisdictional question. And it may be that in resolving the ULP, contractual matters are considered. So what? Sticking with the jurisdictional issue, the issue submitted, the union submitted to the arbitrator included whether the agency committed an unfair labor practice by submitting an unexecuted draft for agency review, they're claiming it's a ULP and the arbitrator decided that. And whether the agency committed an unfair labor practice by repudiating the terms of the existing agreement. It doesn't matter that that implicates contractual matters. The question is whether or not a ULP or ULP issues were presented and decided by the arbitrator sufficient for the authority to take the question and decide it, which they did. So what if there's a contract? There are contract disputes that will inform the resolution of the ULP. The question is whether or not ULP issues were presented to the arbitrator and whether he purported to decide it. He did. He focused on that. That's what he focused on. That was what the union's issues were to the arbitrator, specifically just quoting the union. That's what they said the case was about. There were ULPs committed here, and the arbitrator decided those two ULPs. And the FLRA then said, well, we're deciding it, and the arbitrator was wrong. There were no ULPs. So, first of all, if you go back to Overseas Education Association, all the way to a more recent case after the local 3690 3F 4384, this court has looked at whether the underlying claim was really about a contract claim or about a ULP. So, in those cases, it was a contract claim. They later pleaded a ULP and tried to plead a ULP. But at its core, if it's a contract claim, then it doesn't involve a ULP. Now, right here, if you look at what is a contract claim, it cannot involve a ULP, is what you said? No, if it's purely a contract claim, if it's purely about the interpretation of the collective bargaining agreement, if it's clearly about the resolution of contractual proposals, then that is separate and apart, a claim separate and apart from the ULP. Now, right here, if you look at how the arbitrator decided this case, how it was pled, the first step that they asked the arbitrator to do was to overturn the panel's resolution of two contractual proposals. And that is a contractual issue. Now, they can build upon that ULPs. They're saying the issue that they presented was whether the agency committed a ULP by submitting an unexecuted draft to the agency. That's a straightforward ULP claim. They're saying that action that they took by submitting this for approval by the head was a ULP in their view. And the arbitrator decided that. And they also said, there's a agency committed an unfair labor practice by repudiating the terms of an existing agreement. That's a very usual ULP claim. And that's what they said. And the FLRA said, no, they're wrong. There was no ULP. The arbitrator was wrong in assuming that there was. It's a straightforward ULP question. The fact that it involves contractual matters doesn't make it any less a ULP claim. Well, the ULP claim is based on the fact that they thought the contract had a impermissible provision. So what? But that impermissible provision was based on a contractual interpretation that is already made by the panel. The ULP may involve either the NLRB or the FLRA looking to see what the alleged contractual terms are or not. That's not unusual. But right here, all they're doing is alleging a conflict, which would resolve as a contractual matter. And the problem is that what the FLRA said, well, and the arbitrator purported to decide them. But we now are going to look at it and say that this position based on ULP is wrong. Well, if you look at the petitioner's brief itself on page 28, it characterizes the arbitrator decision as one of purely contractual matter, where they resolve the conflict between the two provisions. The existence of that conflict is what it's built for, where all the ULPs are built upon. If there is no conflict, then all the ULPs do not exist. They're all founded upon the fact that they have alleged a conflict, which the panel had rejected as a matter of contractual issue, which the panel had authority without review to decide under the congressional. Is it the authority's view that the authority's order is based exclusively on the contractual point and not on ULPs? Yes, exactly. What it talks about is the result. It read the claims as directly reviewing the panel's decision. It's the arbitrator trying to directly review and overturn the panel's decision, which is exactly what happened right at the outset. The panel's first point was to overturn the panel's resolution of two contractual proposals and opine on the merits of how it resolved those questions. So why does that not necessarily implicate the underlying ULPs? Because I take that to be the union's position here. Right, because what they did was basically circumvent. If you look at the arbitrary decision, he had no right to actually review the underlying contractual resolution of the panel. If you take away that from the arbitrary decision, there are no ULPs left, because the whole structure of the arbitrary decision is built upon first overturning the panel's contractual resolution. So if we follow what Congress has said, that there's no review, the arbitrary decision should not exist, and the ULP's finding should not exist, because it's based on a false premise. So I think if you look at how comparing the arbitrary decision at JA-19 and the FISP's decision, it's exactly two approaches to the contractual proposals and trying to resolve the contractual proposals in opposite ways. Now, if you look at the arbitrary decision, its foundation, it is trying to overturn the panel's decision, and everything is based upon that. And I want to point out that the impasse proceedings is very different from what the union's arguing. It is really about what the panel imposes on the parties as final and binding under the contract. We're not talking about a normal circumstance where two parties are trying to come meeting of the minds. It's a special circumstance in federal uncollected bargaining that we have to uphold the final and binding nature of what the panel decided. Now, what the union is proposing is to overturn and asking this court to overturn the final binding contractual resolution of two proposals. And this case started in 2010. The Brewer decision from this court noted that Congress wanted these very final, rapid decisions from the panel to resolve these contractual proposals. I hope what the union has done is basically dressed up these claims, added these UOPs, and try to circumvent that by finality of that decision to use this UOP to then overturn the finality of the contractual resolution. Now, I think it's important to note that what the authority did was say there's a very big difference between alleging a direct review versus a collateral attack. And what the petitioner did was, at its base, asking the arbitrator and the courts today to directly review the resolution of the contractual. That's the first step that this court will have to look at before it reaches any of the UOP issues, which are just Now, I think I just want to, if there's any remaining time, it's due. I think I'm over time, and there are no further questions. Colleagues have any further questions? Judge Henderson, anything further? Yeah, I just want to make this comment. You're relying on mention or implication of an unfair labor practice in the authority decision. Now, that, to me, completely contradicts the second paragraph in our decision. I don't see how we can recharacterize the authority decision, but I don't have a question. Can I comment? Yes, you may. Judge Henderson, I appreciate that. I think what I read out of 3690 is that there is a strong policy-based and structural reason why we don't want to curtail, we don't want to review these final panel decisions and allow parties then to convert contractual claims at the outset into unfair labor practices, because otherwise it would curtail, it would just prevent the panels and arbitrators from resolving purely contractual issues expeditiously. And in fact, if you look at the petitioner's brief at 28, arbitrator did say this was a contractual matter, and that's what they're trying to affirm today. Thank you. The National Weather Service Employees Organization case, which I argued not long ago here, was totally based, the unfair labor practice allegation in that case, was totally based on whether or not, or how one would interpret a contractual agreement. In that case, it was the ground rules. And interestingly, in NWO's case, it was the ground rules, and it was the NWSEO. The court found jurisdiction, ultimately found that the arbitrators, that the FLRA was wrong in overturning the arbitrator's interpretation of the contract, but reaffirmed that there was no unfair labor practice. And yet we still, and in reaffirming that there was no unfair labor practice, this court reviewed the other rationale behind the authority's decision. Well, that case, in some sense, wasn't really about, the way that I read it, at least, wasn't about whether there was a ULP involved in the authority's decision. It was a question about whether you could review the entirety of the authority's decision when there was a ULP, or you could only review the part of it that decided a ULP. Well, and what I heard my colleague argue a moment ago, as I understood his argument, was that, since the union's underlying claim here is about interpretation of the contract, which we do not agree is proper characterization of our case, ergo, it's not reviewable. And as Judge Edwards pointed out, you will often have, particularly when the repudiation of any unfair labor practices, alleging a repudiation of a contract, which is a common unfair labor practice, is going to involve, inevitably, the interpretation of the agreement. I also want to note that my colleague was arguing that the FSIP's interpretation of the party's contract was not subject to review. That is entirely wrong, because the FSIP does not have jurisdiction to interpret the contract. And that's clear in FLRA case law. In fact, the FLRA, the FSIP, has no jurisdiction whatsoever to resolve bargaining disputes over whether parties have a bargaining obligation. And it's ironic that just six months after the authority issued the original decision in this case, finding that arbitrator Orkin did not have jurisdiction to determine whether the panel decision was within its jurisdiction or not, or whether it was in a case involving the National Labor Relations Board and the National Labor Relations Board Professional Association, overturned arbitrator Vaughn's decision in which he held that he did not have jurisdiction to decide whether or not the panel properly took jurisdiction over what was an allegedly permissive issue. The FLRA sent the case back to arbitrator Vaughn saying you do have jurisdiction to determine whether the provision sent to the panel by the NLRB was permissive or not, and whether or not, and if you find it was not, find it was permissive, you have a right to find that it's not, that it's not binding on the parties. That's exactly what arbitrator Orkin did. He looked at the provision imposed by the panel. He decided two things. One, he decided that it was permissive and therefore not binding. And secondly, that even if the panel had the authority to issue it, it conflicts with another agreement that the parties had in the new contract, and further negotiations were necessary to resolve that apparent conflict. I think you are over your time. Let me just see if there are any further questions, Judge Henderson. Okay, thank you. Thank you very much. The case is submitted.
judges: Henderson, Rao, Edwards